UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JORDAN WILSON,<br><br>           Plaintiff,<br><br>    v.<br><br>JMP GROUP LLC, JOSEPH A. JOLSON, CRAIG R. JOHNSON, CARTER D. MACK, MARK L. LEHMANN, KENNETH M. KARMIN, GLENN H. TONGUE, H. MARK LUNENBURG, JONATHAN M. ORSZAG, and STACI SLAUGHTER,<br><br>           Defendants, | Civil Action No. _____<br><br>**COMPLAINT FOR VIOLATIONS OF THE SECURITIES EXCHANGE ACT OF 1934**<br><br>**JURY TRIAL DEMAND** |

Plaintiff Jordan Wilson ("Plaintiff") alleges the following upon information and belief, including investigation of counsel and review of publicly available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

## NATURE OF THE ACTION

1. Plaintiff brings this action against JMP Group LLC ("JMP" or the "Company") and JMP's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934, 15.U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. § 240.14a-9, arising out of the Board's attempt to sell the Company to Citizens Financial Group, Inc. through its wholly-owned subsidiary Jolt Acquisition LLC (collectively "Citizens").

2. Defendants have violated the above-referenced Sections of the Exchange Act by causing a materially incomplete and misleading definitive proxy statement (the "Proxy") to be filed with the Securities and Exchange Commission ("SEC") on October 15, 2021. The Proxy recommends that JMP stockholders vote in favor of a proposed transaction (the "Proposed

1

Transaction") whereby JMP is acquired by Citizens. The Proposed Transaction was first disclosed on September 8, 2021, when JMP and Citizens announced that they had entered into a definitive merger agreement (the "Merger Agreement") pursuant to which Citizens will acquire all of the outstanding shares of common stock of JMP for $7.50 per share (the "Merger Consideration"). The deal is valued at approximately $149 million and is expected to close in the fourth quarter of 2021.

3.  The Proxy is materially incomplete and contains misleading representations and information in violation of Sections 14(a) and 20(a) of the Exchange Act. Specifically, the Proxy contains materially incomplete and misleading information concerning the sales process, the financial projections prepared by JMP management, and the financial analyses conducted by Keefe, Bruyette & Woods, Inc. ("KBW"), JMP's financial advisor.

4.  For these reasons, and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disseminated to JMP's stockholders. In the event the Proposed Transaction is consummated without the material omissions referenced below being remedied, Plaintiff seeks to recover damages resulting from the Defendants' violations.

**PARTIES**

5.  Plaintiff is, and has been at all relevant times, the owner of shares of common stock of JMP.

6.  Defendant JMP is a corporation organized and existing under the laws of the State of Delaware. The Company's principal executive offices are located at 600 Montgomery Street, Suite 1100, San Francisco, California 94111. JMP common stock trades on NYSE under the ticker symbol "JMP."

7. Defendant Joseph A. Jolson has been CEO and a director of the Company since 1999. Defendant Jolson also serves as Chairman of the Board.

8. Defendant Craig R. Johnson has been a director of the Company since 2002. Defendant Johnson is Vice Chairman of the Company.

9. Defendant Carter D. Mack has been a director of the Company since 2004. Defendant Mack is a co-founder of the Company and served as President from 2011 to 2020.

10. Defendant Mark L. Lehmann has been a director of the Company since 2003. Defendant Lehmann is CEO of JMP Securities.

11. Defendant Glenn H. Tongue has been a director of the Company since 2007.

12. Defendant Kenneth M. Karmin has been a director of the Company since 2008.

13. Defendant H. Mark Lunenburg has been a director of the Company since 2009.

14. Defendant Jonathan M. Orszag has been a director of the Company since 2011.

15. Defendant Staci Slaughter has been a director of the Company since 2020.

16. Defendants Jolson, Johnson, Mack, Lehmann, Tongue, Karmin, Lunenburg, Orszag and Slaughter are collectively referred to herein as the "Board."

17. Nonparty Citizens Financial Group, Inc. is a Delaware corporation with its principal executive offices located at One Citizens Plaza, Providence, Rhode Island 02903. Citizens Financial Group, Inc. common stock trades on NYSE under the ticker symbol "CFG."

18. Nonparty Jolt Acquisition LLC is a Delaware limited liability company and is a wholly owned subsidiary of Citizens Financial Group, Inc.

## JURISDICTION AND VENUE

19. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges

violations of Section 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

20. Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

21. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because a significant amount of the conduct at issue took place and had an effect in this District.

## FURTHER SUBSTANTIVE ALLEGATIONS

A. **Background of the Company and the Proposed Transaction**

22. JMP is a capital markets firm that provides investment banking, trading, and equity research services to corporate and institutional clients. JMP also provides alternative asset management products and services to institutional and high-net-worth investors, and invests in corporate credit instruments.

23. On September 8, 2021, the Company entered into the Merger Agreement with Citizens. According to the press release issued that day announcing the Proposed Transaction:

> **Citizens Financial Group, Inc. to Acquire JMP Group LLC**
> Expands capital markets capabilities for commercial clients
> Deepens expertise in healthcare, technology, financial services and real estate
> sectors
>
> **PROVIDENCE, RI, and SAN FRANCISCO, CA** – Citizens Financial Group, Inc. (NYSE: CFG or "Citizens") and JMP Group LLC (NYSE: JMP or "JMP") announced today that they have entered into a definitive merger agreement under which Citizens will acquire JMP in an all-cash transaction.
>
> JMP is a highly regarded capital markets firm that provides investment banking services, including strategic advisory, equity research and sales and trading focused primarily on the healthcare, technology, financial services and real estate sectors.

Upon the closing of the transaction, JMP, which was founded in 1999 and is headquartered in San Francisco, will operate as a wholly-owned subsidiary of Citizens.

"The acquisition of JMP represents an attractive opportunity for us to continue to broaden both our capabilities and our customer base in our commercial banking segment," said Bruce Van Saun, chairman and chief executive officer at Citizens. "The acquisition further strengthens Citizens' growing corporate finance and strategic advisory capabilities, with a focus on high growth and compelling industry sectors."

"We are adding a wealth of talented bankers as well as an institutional equities franchise that aligns well with our sector-focused corporate banking philosophy," added Donald McCree, vice chairman and head of commercial banking at Citizens. "The transaction brings us a strong platform based in San Francisco and New York, expanding both our range of services and our national presence."

"Citizens takes an approach to business and client service that mirrors our own," said Joseph Jolson, founder and chairman of JMP. "We are energized by the opportunity to provide new strategic advisory and equities capabilities to Citizens' corporate client base while simultaneously offering JMP Securities' clients a highly complementary set of products and services as part of a leading U.S. depository institution."

Under the terms of the merger agreement, JMP shareholders will receive $7.50 for each common share of JMP they own, or approximately $149 million in cash. The merger agreement has been unanimously approved by the boards of directors of each company, and the transaction is targeted to close in the fourth quarter of 2021, subject to approval by the shareholders of JMP, receipt of required regulatory approvals, and satisfaction of other customary closing conditions. As of September 1, 2021, executive management and members of JMP's board of directors owned approximately 60% of its outstanding common shares.

### B. The Materially Incomplete and Misleading Proxy

24.     On October 15, 2021, Defendants filed the Proxy with the SEC. The purpose of the Proxy is, *inter alia*, to provide the Company's stockholders with all material information necessary for them to make an informed decision on whether to vote in favor of the Proposed Transaction. However, significant and material facts were not provided to Plaintiff. Without such information, Plaintiff cannot make a fully informed decision concerning whether to vote in favor of the Proposed Transaction.

*Materially Misleading Statements/Omissions Regarding the Management-Prepared Financial Forecasts*

25. The Proxy discloses management-prepared financial projections for the Company which are materially misleading. The Proxy indicates that in connection with the rendering of KBW's fairness opinion, KBW reviewed "financial and operating forecasts and projections of JMP that were prepared by JMP management." Accordingly, the Proxy should have, but failed to, provide certain information in the projections that JMP's management provided to the Board and KBW.

26. Notably, Defendants failed to disclose the estimated excess cash flows that could be generated by JMP as a standalone company from June 30, 2021, to December 31, 2026. The Proxy also fails to disclose how the estimated excess cash flows are defined and the line items underlying the calculation of those estimated excess cash flows. Furthermore, the Proxy fails to disclose total net revenues and operating net income for 2022 through 2026. This omitted information is necessary for Plaintiff to make an informed decision on whether to vote in favor of the Proposed Transaction.

*Materially Incomplete and Misleading Disclosures Concerning KBW's Financial Analyses*

27. With respect to the *Selected Companies Analysis,* the Proxy fails to disclose the multiples for Market Cap / LTM Revenue, Market Cap / CY 2021E Revenue, Market Cap / CY 2022E Revenue, Price / LTM EPS, Price / CY 2021E EPS, Price / CY 2022E EPS, Price / Book Value, and Price / Tangible Book Value for each company. The Proxy also fails to disclose the calendar year 2021 and 2022 revenue and EPS estimates for JMP.

28. With respect to the *Selected Transactions Analysis*, the Proxy fails to disclose the transaction values for each selected transaction. The Proxy also fails to disclose the multiples for Transaction value at announcement / LTM Revenue, Transaction value at announcement / Forward

Earnings, and Transaction value at announcement / Book Value for each transaction selected.

29. With respect to the *Discounted Cash Flow Analysis,* the Proxy fails to disclose operating net income for the fiscal year ending December 31, 2026. The Proxy also fails to disclose the terminal values for the Company. Furthermore, the Proxy does not disclose the inputs and assumptions underlying the discount rates of 11.0% 15.0% and then 12.8%.

### *Materially Incomplete and Misleading Disclosures Concerning the Flawed Process*

30. The Proxy also fails to disclose material information concerning the sales process. For example, the Proxy fails to disclose information about confidentiality agreements entered into between the Company and parties to the sales process. The Proxy does not disclose whether the confidentiality agreements contain standstill provisions, the terms of the standstill provisions, and whether the standstill provisions are still in effect or have been waived. The disclosure of the terms of any standstill provisions is crucial to JMP stockholders being fully informed of whether their fiduciaries have put in place restrictive devices to foreclose a topping bid for the Company.

31. This information is necessary to provide Company stockholders a complete and accurate picture of the sales process and its fairness. Without this information, Plaintiff is not fully informed as to the defendants' actions, including those that may have been taken in bad faith, and cannot fairly assess the process. And without all material information, Plaintiff is unable to make a fully informed decision in connection with the Proposed Transaction and faces irreparable harm, warranting the injunctive relief sought herein.

32. In addition, the Individual Defendants knew or recklessly disregarded that the Proxy omits the material information concerning the Proposed Transaction and contains the materially incomplete and misleading information discussed above.

33. Specifically, the Individual Defendants undoubtedly reviewed the contents of the

Proxy before it was filed with the SEC. Indeed, as directors of the Company, they were required to do so. The Individual Defendants thus knew or recklessly disregarded that the Proxy omits the material information referenced above and contains the incomplete and misleading information referenced above.

34. Further, the Proxy indicates that on September 7, 2021, KBW reviewed with the Board its financial analysis of the Merger Consideration and delivered to the Board an oral opinion, which was confirmed by delivery of a written opinion of the same date, to the effect that the Merger Consideration was fair, from a financial point of view, to JMP stockholders. Accordingly, the Individual Defendants undoubtedly reviewed or were presented with the material information concerning KBW's financial analyses which has been omitted from the Proxy, and thus knew or should have known that such information has been omitted.

35. Plaintiff is immediately threatened by the wrongs complained of herein, and lack an adequate remedy at law. Accordingly, Plaintiff seeks injunctive and other equitable relief to prevent the irreparable injury that he will continue to suffer absent judicial intervention.

## CLAIMS FOR RELIEF

## COUNT I

**Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9**

36. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

37. Defendants have filed the Proxy with the SEC with the intention of soliciting JMP stockholder support for the Proposed Transaction. Each of the Individual Defendants reviewed and authorized the dissemination of the Proxy, which fails to provide the material information referenced above.

38. In so doing, Defendants made materially incomplete and misleading statements

and/or omitted material information necessary to make the statements made not misleading. Each of the Individual Defendants, by virtue of their roles as officers and/or directors of JMP, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a).

39.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that such communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

40.     Specifically, and as detailed above, the Proxy violates Section 14(a) and Rule 14a-9 because it omits material facts concerning: (i) the sales process; (ii) management's financial projections; and (iii) the value of JMP shares and the financial analyses performed by KBW in support of its fairness opinion.

41.     Moreover, in the exercise of reasonable care, the Individual Defendants knew or should have known that the Proxy is materially misleading and omits material information that is necessary to render it not misleading. The Individual Defendants undoubtedly reviewed and relied upon the omitted information identified above in connection with their decision to approve and recommend the Proposed Transaction; indeed, the Proxy states that KBW reviewed and discussed its financial analyses with the Board on September 7, 2021, and further states that the Board considered KBW's financial analyses and fairness opinion in connection with approving the Proposed Transaction. The Individual Defendants knew or should have known that the material information identified above has been omitted from the Proxy, rendering the sections of the Proxy identified above to be materially incomplete and misleading.

42. The misrepresentations and omissions in the Proxy are material to Plaintiff, who will be deprived of his right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

43. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

44. The Individual Defendants acted as controlling persons of JMP within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of JMP and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

45. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy and other statements alleged by Plaintiff to be misleading prior to the time the Proxy was filed with the SEC and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

46. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act

violations alleged herein, and exercised the same. The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction. The Proxy at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were, thus, directly involved in the making of the Proxy.

47. In addition, as the Proxy sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Proxy purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

48. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

49. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

## RELIEF REQUESTED

WHEREFORE, Plaintiff demands injunctive relief in his favor and against the Defendants jointly and severally, as follows:

A. Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Proxy;

B. In the event that the transaction is consummated prior to the entry of this Court's final judgment, rescinding it or awarding Plaintiff rescissory damages;

C. Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

D. Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

E. Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: October 31, 2021         **ROWLEY LAW PLLC**

                     *S/ Shane T. Rowley*
                     Shane T. Rowley (SR-0740)
                     Danielle Rowland Lindahl
                     50 Main Street, Suite 1000
                     White Plains, NY 10606
                     Tel: (914) 400-1920
                     Fax: (914) 301-3514
                     Email: srowley@rowleylawpllc.com
                     Email: drl@rowleylawpllc.com

                     *Attorneys for Plaintiff*